[Cite as *In re A.M.A.*, 2023-Ohio-723.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| [A.M.A.], | : | |
| [D.A.A.], | : | No. 22AP-325<br>(C.P.C. No. 22JU-5392) |
| Plaintiff-Appellant. | : | (REGULAR CALENDAR) |
| | : | |

D E C I S I O N

Rendered on March 9, 2023

**On brief:** *Advocating Opportunity*, and *Emily Dunlap*, *Law Office of Karin L. Coble*, and *Karin L. Coble*, for appellant. **Argued:** *Karin L. Coble*.

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations, Juvenile Branch

BEATTY BLUNT, P.J.

{¶ 1} Plaintiff-appellant, D.A.A., appeals the June 2, 2022 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, vacating its emergency custody order for A.M.A. with special findings issued the prior day, and issuing a new emergency custody order without the requested special findings. We reverse and vacate the June 2, 2022 order, thereby reinstating the June 1, 2022 order.

{¶ 2} This appeal stems from an unusual immigration status that is available to noncitizen children who are found in the United States in the custody of persons other than their parents. This "special immigrant juvenile" status is a legally protected resident status that a noncitizen child can apply for if the child is in the custody of a legal resident or citizen other than the child's own parents, if the child is placed in the legal custody of that legal resident or citizen by the state juvenile court having jurisdiction over the case, and that court issues particular required factual findings regarding that child's placement and need for both custody and legal status.

{¶ 3}   A.M.A, (d.o.b. 6/4/2004) was born in Ghana, is a citizen of that country, and was a minor at the time of the proceedings under review. A.M.A's parents are deceased, and he was placed in the care of his brother-in-law, D.A.A. ("appellant"), in the United States by the U.S. Office of Refugee Resettlement, Division of Children's Services, after he was detained by I.C.E.   A.M.A. does not have legal status in the U.S., but according to documentation filed with the trial court, the Department of Health and Human Services concluded that he had been "subjected to a severe form of trafficking in persons."  (*See* Eligibility Letter from Administration for Children and Families, Office on Trafficking in Persons, attached to May 23, 2022 Mot. for Emergency Custody and Special Findings at Ex. 1.)

{¶ 4}   Appellant filed a motion for legal custody of A.M.A. and requested "special" findings of fact that "the minor child is unable to reunify with one or both of his parents due to neglect, abandonment, or some similar basis under state law, and that it is not in his best interests to be returned to Ghana."  (Mot. at 1.)  These findings would allow A.M.A. to apply for "Special Immigrant Juvenile Status" under 8 U.S.C. 1101(a)(27)(J), which provides that a "special immigrant" is:

> (J) an immigrant who is present in the United States—
>
> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that—
>
> (I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health

and Human Services specifically consents to such jurisdiction; and

(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter.

As the statute indicates, the findings made by a juvenile court under 8 U.S.C. 1101(a)(27)(J)(i) and (ii) do not automatically confer the status—it must be approved by the Secretary of Homeland Security. But the judicial findings are a prerequisite to the Secretary's grant of the status, and if special findings are not made, the minor is not eligible to apply for relief.

{¶ 5} A.M.A. was placed in the emergency custody of appellant on May 23, 2022, and the motion was heard on the merits on May 26 and June 1, 2022. D.A.A. testified on May 26, and A.M.A. testified on June 1. A.M.A. testified that he was sexually trafficked in Ghana since he was 14, but that he was eventually able to flee to Brazil, then Peru, then Ecuador, then Columbia, then Panama, then Costa Rica, then Guatamala, then Honduras, then Mexico, and finally the United States, that he engaged in sexual acts to pay for his way to the United States, that there is no one in Ghana to take care of him or protect him, and that he believes he will be killed if returned to Ghana because "what I'm doing is not acceptable in the country" because he is gay. (*See generally* June 1, 2022 Tr. at 37-38.) Notwithstanding this testimony, the trial court appeared concerned that—contrary to the Department of Health and Human Services—A.M.A. was "not being trafficked."

THE COURT: So, you're saying if you'd go anywhere in the country, you're gonna [sic in original] be killed?

A.M.A.: Yes, please.

THE COURT: Why is that?

A.M.A.: Because it's not - - because what I'm doing is not acceptable in the country.

THE COURT: What are you doing that's unacceptable? Are you - - it is because you're gay?

A.M.A.: Yes, please.

THE COURT: Then you're not being trafficked. Are you saying you're not trafficked, you're just gay?

A.M.A.: I'm gay and I was beaten. They beat me.

*Id.* In response, D.A.A. and A.M.A.'s counsel pointed out that it was not necessarily crucial to prove that A.M.A. was forced to engage in prostitution by another person:

ATTORNEY DUNLAP: Thank you. So, on page 22 of the Country Conditions Report, it does state that the law prohibits sex with a child younger than age 16. So regardless of whether or not [A.M.A.] believed what he was doing was on his own volition, it was a crime that was being committed against him until he was age 16.

The definition of human trafficking does not require that someone force, defraud or coerce someone into sex trafficking if they are under the age of 18.

So again, while [A.M.A.] may have had an idea about what was happening to him, human trafficking, very clearly would mean a person engaging in commercial sexual activities under the age of 18 it is human trafficking. That's the United States code for human trafficking. Ohio recognizes the same thing where you do not have to prove coercion if someone is engaged in commercial sex as a minor.

So, as much as I understand that there are nuances in non—not essentially engaging in survival sex to be able to survive in his community, I do want to be clear that the law has clearly stated that was illegal what was happening to him at age 13, 14, 15, and human trafficking is largely recognized as commercial sex with anyone under the age of 18 who is engaging in that commercial sex.

*Id.* at 41-42. In accordance with this argument, at the conclusion of the hearing the trial court signed and issued an order that included the special findings requested. (June 1, 2022 Order at 1.)

**{¶ 6}** But the following day, and without notice to appellant, A.M.A., or their counsel, the trial court filed a new "Order to Vacate Emergency Custody Order" and a new "Emergency Custody Order" ordering that "[D.A.A.] is hereby granted TEMPORARY EMERGENCY CUSTODY of [A.M.A.]," but concluded that "Plaintiff's request for special findings is not well taken." (June 2, 2022 Emergency Custody Order at 1.) The court

referred the case to a magistrate and set a further hearing for August 2, 2022 and this appeal followed.

{¶ 7} Appellant asserts a single assignment of error for the court's review:

> The trial court violated appellant's and the child's rights to procedural Due Process under the U.S. and Ohio Constitutions by ignoring Juv.R. 14(C) and Civ.R. 52.

Appellant's argument is straightforward: the court speaks through its entries, therefore the factual findings were in effect on June 2, 2022 so when the court vacated the findings without a hearing it therefore violated Juv.R. 14(C) and appellant's right to due process. The rule provides:

> The court, upon its own motion or that of any party, shall conduct a hearing with notice to all parties to determine whether any order issued should be modified or terminated, or whether any other dispositional order set forth in division (A) should be issued. The court shall so modify or terminate any order in accordance with the best interest of the child.

*Id.* Appellant contends that prior to vacating its order it should have held a hearing with notice to the parties. *See In re K.A.G.-M.*, 12th Dist. No. CA2012-10-101, 2013-Ohio-780 at ¶ 15-16, quoting *In re B.L.*, 12th Dist. CA2008-05-013, 2008-Ohio-6385, ¶ 8 (" 'Procedural due process requires the government to give reasonable notice and a meaningful opportunity to be heard * * *.' The juvenile court's decision to sua sponte vacate the order denied Father and Mother the opportunity to be heard.")

{¶ 8} We agree with the appellant's argument. The trial court vacated its prior orders without a hearing and notice, in violation of Juv.R. 14(C). And given the fact that the trial court's decision has the effect of denying A.M.A. eligibility for a legal immigration status, it clearly violates the procedural due process rights of the parties. But given our review of the record, we believe it is appropriate to go further. The uncontroverted evidence in the record clearly establishes that A.M.A. is an "immigrant who is present in the United States * * * who has been declared dependent * * * whose reunification with one or both of the immigrant's parents is not viable * * * [and] that it would not be in [his] best interest to be returned" to Ghana. *Compare* with 8 U.S.C. 1101(a)(27)(J). Moreover, the record does not contain any factual or legal basis for the trial court's decision to vacate the special

findings it issued on June 1, 2022—accordingly, we conclude that it was a clear abuse of the trial court's discretion to do so.

{¶ 9} For the foregoing reasons, we reverse the trial court's June 2, 2022 "Order to Vacate Emergency Custody Order," and vacate the June 2, 2022 "Emergency Custody Order." Accordingly, the trial court's June 1, 2022 order, including the requested special, findings remains in effect.

*Orders vacated.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____