[Cite as *Vargas Pelaez v. Martinez Moreno*, 2025-Ohio-5532.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Abigail Vargas Pelaez, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 23AP-747 |
| v. | : | (C.P.C. No. 23DR-1107) |
| Mario Alberto Martinez Moreno, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 11, 2025

**On brief:** *Kimberly P. Jordan*, for appellant. **Argued:**
*Kimberly P. Jordan*.

**On brief:** *Mario Alberto Martinez Moreno*, pro se.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

MENTEL, J.

{¶ 1} Plaintiff-appellant, Abigail Vargas Pelaez, appeals from the judgment entry and decree of divorce entered by the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.[1] Ms. Vargas Pelaez does not challenge the decree

---

[1] In this appeal, we refer to the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, as "the juvenile court" for two reasons. First, to locate the court within the following definition under 8 C.F.R. 204.11(a): "Juvenile court means a court located in the United States that has jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles." Second, 8 U.S.C. 1101(a)(27)(J)(i), 8 C.F.R. 204.11, and the relevant caselaw all refer to the "juvenile court." Ohio law differentiates between the domestic relations division and the juvenile branch, but both exist within the court of common pleas. R.C. 3105.011(A) vests the "court of common pleas including divisions of courts of domestic relations" with "full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters," which include both "child support and allocation of parental rights and responsibilities" and actions for divorce under R.C. 3105.01. R.C. 3105.011(B)(1) & (2). In addition, R.C. 2151.07 states that the "juvenile court is a court of record within the court of common pleas" with "the powers and jurisdiction conferred in Chapters 2151. and 2152. of the Revised Code." Furthermore, the "judges

of divorce or custody determination in her favor, but appeals the juvenile court's failure to make findings that would allow her children to petition the federal government for Special Immigrant Juvenile ("SIJ") status under 8 U.S.C. 1101(a)(27)(J). She also appeals the juvenile court's assessment of costs after finding that she was an indigent litigant under R.C. 2323.311. For the following reasons, we affirm the juvenile court's custody determination, vacate and modify the portion of its judgment relevant to the special findings under 8 U.S.C. 1101(a)(27)(J), and reverse the order imposing costs on Ms. Vargas Pelaez.

## I. Factual & Procedural Background

{¶ 2} Ms. Vargas Pelaez filed an uncontested complaint seeking divorce from her husband, defendant-appellee, Mario Alberto Martinez Moreno, and legal custody of her children on April 2, 2023. In addition, she requested in the complaint that the juvenile court make several findings that a minor must submit with a petition for SIJ status, including that reunification of her children with her husband would not be possible due to abandonment under R.C. 2151.011(C), neglect under R.C. 2151.03(A), or abuse under 2151.031(B), and that it would not be in her children's best interest to return to Mexico. (Apr. 2, 2023 Compl. at 3.)

{¶ 3} The juvenile court held an evidentiary hearing on October 27, 2023. There, Ms. Vargas Pelaez testified that she had married Mr. Martinez Moreno in October of 2007 in Guerrero, Mexico. (Oct. 27, 2023 Tr. at 5.) They lived together until 2013, when they "split because he had problems with addictions and alcoholism." *Id.* at 6. Ms. Vargas Pelaez has not seen him since. *Id.* They had one biological son, M.A., in 2008, and Ms. Vargas Palaez gave birth to a daughter, M.N., in 2017, who was not her husband's biological daughter. *Id.* at 7-10. She left Mexico in February of 2021. *Id.* at 17. At that time, her children stayed behind with her mother, and then came to the United States to live with her in October of 2022. *Id.* at 16.

{¶ 4} Ms. Vargas Pelaez testified about the physical abuse her husband subjected her to: "He used to hit me. . . . And even if I was in the company of my son, he would hit me as well. He never stopped hitting me." *Id.* at 12. She also testified that her husband dealt

---

of the court of common pleas, division of domestic relations" are vested with "all the powers relating to juvenile courts . . . and all divorce, dissolution of marriage, legal separation, and annulment cases" in Franklin County. R.C. 2301.03(A).

drugs and "wouldn't hesitate to use drugs in front of us." *Id.* She agreed that it would be "harmful" if her husband had custody of the children. *Id.* at 13. Ms. Vargas Pelaez also stated that her mother was "elderly" and now unable to care for them, and her father had passed away two months ago. *Id.* at 16-17. There was no one in Mexico who could take care of her children if they returned to Mexico. *Id.* at 13. Although she had three sisters, she "barely" communicated with two of them, and did not feel that her other sister was "suitable to take care of" the children, and "already has her husband and her family." *Id.* at 23.

{¶ 5} The juvenile court entered judgment granting the divorce and awarding legal custody of the children to Ms. Vargas Pelaez on November 20, 2023. The juvenile court made the finding that M.N. was "legally presumed" to be the daughter of Mr. Martinez Moreno because he and Ms. Vargas Pelaez were still married when she was born. (Nov. 20, 2023 Decision & Jgmt. Entry Divorce Decree at 7.) However, the juvenile court specifically denied her request that it make the special findings necessary to petition for SIJ status. The juvenile court also assessed her fees and costs, even though it had approved her request to qualify as an indigent litigant under R.C. 2323.311.

{¶ 6} Ms. Vargas Pelaez now appeals and asserts the following assignments of error:

> [I.] The court abused its discretion when it failed to make Special Immigrant Juvenile Status findings after issuing a qualifying custody appointment to one parent.
>
> [II.] The court abused its discretion when it assessed Ms. Vargas [Palaez], an indigent plaintiff, fees and costs associated with her civil case.

## II. Standard of Review

{¶ 7} In previous appeals arising from a party seeking findings from the juvenile court in order to petition for SIJ status, we did not specify the standard of review applied. *See Gonzalez v. Rodriguez*, 2018-Ohio-2410 (10th Dist.) (affirming juvenile court's denial of request to make SIJ findings based on interpretation of 8 U.S.C. 1101(a)(27)(J) that parties did qualify as a matter of law) and *In re A.M.A.*, 2023-Ohio-723, ¶ 8 (10th Dist.) (reversing juvenile court's sua sponte decision to "vacate[] its prior orders" with SIJ findings "without a hearing and notice" because it "clearly violate[d] the procedural due process rights of the parties"). However, both *Gonzalez* and *In re A.M.A.* addressed issues

of law, which are reviewed "de novo on appeal." *Ceccarelli v. Levin*, 2010-Ohio-5681, ¶ 8. Here, we apply that standard to the juvenile court's resolution of legal issues, such as its interpretation of 8 U.S.C. 1101(a)(27)(J). *See id.* (applying de novo review to "question of statutory construction").

{¶ 8} However, a juvenile court makes the findings that are a prerequisite to SIJ status "under State law." 8 U.S.C. 1101(a)(27)(J). And here, where the court acted as a factfinder in a custody proceeding under R.C. 3109.04, an abuse-of-discretion standard applies to our review of its factual determinations. *E.g.*, *Miller v. Miller*, 37 Ohio St.3d 71 (1988). Under that standard, a trial court abuses its discretion if its ruling is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "An unreasonable decision is one that is unsupported by a sound reasoning process." *Lias v. Beekman*, 2007-Ohio-5737, ¶ 12 (10th Dist.), citing *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). An arbitrary ruling lacks an " 'adequate determining principle' " and is " 'not governed by any fixed rules or standard.' " *Downey v. 610 Morrison Rd., L.L.C.*, 2008-Ohio-3524, ¶ 11 (10th Dist.), quoting *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981). An unconscionable ruling " 'affront[s] the sense of justice, decency, or reasonableness.' " *U.S. Bank Natl. Assn. v. Collier*, 2008-Ohio-6817, ¶19 (10th Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004).

## III. First Assignment of Error

{¶ 9} In the first assignment of error, Ms. Vargas Pelaez challenges the juvenile court's failure to make the special findings she requested that would allow her to apply for SIJ status for her children. She argues that the juvenile court "incorrectly interpreted the federal statute" by concluding that her children "were ineligible for SJIS findings" because they were in her custody. (Appellant's Merit Brief at 7-8.) She also argues that the juvenile court erred by failing to recognize that the children's reunification with their father was not viable because of his abandonment, and by declining to find that it was not in their best interest to return to their country of origin. *Id.*

{¶ 10} Congress created the Special Immigrant Juvenile status as part of an extensive amendment to the Immigration and Nationality Act of 1965 ("INA") effected by the Immigration Act of 1990. P.L. No. 101-649, Sec. 153, 104 Stat. 4978, codified at 8 U.S.C. 1101(a)(27)(J). The classification allows "children who have been subject to abuse, neglect,

or abandonment by one or both of their parents to remain in the United States and apply for lawful permanent residence."[2]  *Guardianship of Penate*, 477 Mass. 268, 273 (2017), citing *Recinos v. Escobar*, 473 Mass. 734, 737 (2016).  The INA defines a SIJ as a child

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; [and]
>
> (ii) for whom it has been determined in . . . judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence . . .

8 U.S.C. 1101(a)(27)(J)(i) through (ii).

{¶ 11} Before submitting a petition seeking SIJ status to the United States Citizenship and Immigration Services ("USCIS"), the federal agency that adjudicates immigrant visa petitions, a petitioner must obtain a state juvenile court order with factual findings relevant to the statutory requirements.  "The juvenile court must have made a judicial determination that parental reunification with one or both parents is not viable due to abuse, abandonment, neglect, or a similar basis under State law."  8 C.F.R. 204.11(c)(1).  The petitioner must submit the qualifying state juvenile court order containing such findings, along with other evidence in support of the petition, to USCIS for adjudication.  8 C.F.R. 204.11(d).  The process "employs a unique hybrid procedure requiring the collaboration of state and federal systems" based on the recognition that "juvenile courts have particularized training and expertise in the area of child welfare and abuse," and can make "critical decisions about the child's best interests" outside the expertise and jurisdiction of federal courts.  David B. Thronson, *Kids Will Be Kids? Reconsidering*

---

[2] Although SIJ status creates a "pathway to citizenship," it differs from typical immigrant status by prohibiting the child from petitioning for legal permanent residency on behalf of their parent.  *Recinos v. Escobar*, 473 Mass. 734, 737 (2016).  There are "[n]o parental immigration rights based on special immigrant juvenile classification." 8 C.F.R. 204.11(i).  *See also* 8 U.S.C. 1101(A)(27)(J)(iii)(II) (stating that "no natural parent or prior adoptive parent of any alien provided special immigrant status . . . shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status" as an immigrant under the INA).

*Conceptions of Children's Rights Underlying Immigration Law*, 63 Ohio St.L.J. 979, 1005 (2002). However, "whether a child qualifies for SIJ status and whether to grant or deny an immigrant child's application for SIJ status is beyond the jurisdiction of" the juvenile court, which only makes the predicate findings that USCIS relies on to adjudicate the petition. *Penate* at 274.

{¶ 12} The juvenile court relied on our decision in *Gonzalez v. Rodriguez*, 2018-Ohio-2410 (10th Dist.), when it refused to make the fundings requested by Ms. Vargas Pelaez, finding it "directly on point with the case" before it. (Divorce Decree at 15.) In *Gonzalez*, we affirmed the juvenile court's denial of a mother's request for findings that would allow her to apply for SIJ status for her child under 8 U.S.C. 1101(a)(27)(J). Interpreting the two requirements of 8 U.S.C. 1101(a)(27)(J)(i), we reasoned that because the mother "came to the trial court and petitioned it for an allocation of custody," she did not qualify as "an individual 'appointed by a State or juvenile court' " under the statutory definition of an SIJ. *Gonzalez* at ¶ 12, quoting 8 U.S.C. 1101(a)(27)(J)(i). We also concluded that the appellant's child could not meet the second requirement under 8 U.S.C. 1101(a)(27)(J)(i) that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law" because, as a matter of law, "a child who is reunified with a parent will not meet this definition." *Id.* at ¶ 13, quoting 8 U.S.C. 1101(a)(27)(J)(i).

{¶ 13} For several reasons, our interpretation of the language of the two requirements of 8 U.S.C. 1101(a)(27)(J)(i) in *Gonzalez* was incorrect. Under the first requirement, the child must either have "been declared dependent on a juvenile court" or "legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States" by the juvenile court. 8 U.S.C. 1101(a)(27)(J)(i); 8 C.F.R. 204.11(c)(1)(i). As mentioned, *Gonzalez* held a parent who obtained legal custody pursuant to an order from the juvenile court "was not 'an individual appointed by a State or juvenile court,' " but this reading of 8 U.S.C. 1101(a)(27)(J)(i) is at odds not only with a number of state supreme courts, but with USCIS policy itself. *Gonzalez* at ¶ 12, quoting 8 U.S.C. 1101(a)(27)(J)(i).

{¶ 14} In *Velasquez v. Miranda*, 321 A.3d 876, 898 (Pa. 2024), the Supreme Court of Pennsylvania examined the "[t]he operative term 'appointed' " in 8 U.S.C.

1101(a)(27)(J)(i) and, because the term "is not defined in the INA," "consider[ed] its plain meaning, assisted as necessary by relevant dictionary definitions." *Id.* at 897. The court reasoned:

> Black's Law Dictionary defines "appoint" as "[t]o fix by decree, order, command, decision, or mutual agreement[.]" *Appoint* (1), Black's Law Dictionary (12th ed. 2024). Merriam-Webster similarly defines the word as "to fix or set officially" or "to name officially." . . .
>
> Given this plain meaning of "appointed," a custody order to one parent is easily the kind of appointment envisioned by the SIJ statute, as the order sets, fixes and defines custody in that individual.

Id.

{¶ 15} The Supreme Court of Nevada has also held that "a child custody order can satisfy the first predicate SIJ finding, which requires a person be 'appointed' to have custody over a juvenile." *Amaya v. Rivera*, 135 Nev. 208, 208 (2019). As noted in *Velasquez*, other state courts have also recognized that "a court ordered, one-parent custodial arrangement" is "one avenue" to obtaining SIJ status. *Velasquez* at 899. *See Kitoko v. Salomao*, 2019 VT 45, ¶ 10 (remanding for juvenile court to make predicate findings for SIJ petition requested by mother awarded "legal and physical" custody under Vermont law); *De Guardado v. Menjivar*, 901 N.W.2d 243, 248 (Minn.App. 2017) (holding that "a plain reading of the SIJ statute indicates that the award to appellant of sole legal and sole physical custody is a placement 'under the custody of . . . an individual appointed' by a state court").

{¶ 16} Furthermore, under the "Eligibility Requirements" of the agency's Policy Manual, "which USCIS requires its adjudicators to follow," a child living with one parent pursuant to a state juvenile court order may qualify for SIJ status. *Roe v. Mayorkas*, 2023 U.S. Dist. LEXIS 84440, *10 (D.Mass. Apr. 28, 2023). The manual states: "A qualifying court-appointed custodial placement *could be with one parent*, if reunification with the other parent is found to be not viable due to that parent's abuse, neglect, abandonment, or similar maltreatment of the petitioner." (Emphasis added.) USCIS Policy Manual, Vol. 6, Part J, Ch. 2(C)(1). "The manual explains that a juvenile court's SIJ[status]-qualifying order may come from a custody court granting sole legal custody to one parent, in addition to a dependency court deciding a child is in need of protective custody." *Velasquez* at 898.

{¶ 17} Our contrary reading of 8 U.S.C. 1101(a)(27)(J)(i) in *Gonzalez* relied solely upon *Boyron v. Lynch*, 604 F.Appx. 72 (2d Cir. 2015).  In *Boyron*, which did not purport to interpret 8 U.S.C. 1101(a)(27)(J)(i) in any way, the sole issue was the refusal to grant a "fifth continuance" to an SIJ petitioner under the " 'highly deferential' " standard federal appellate courts apply to continuances denied by immigration judges.  *Boyron* at 73, quoting *Morgan v. Gonzales*, 445 F.3d 549, 551 (2d Cir. 2006).  The appellant, who lived with his mother, attempted to apply for SIJ status with "an order from the Connecticut Court of Probate granting voluntary conservatorship over [his] financial and personal affairs to his cousin."  *Id.* at 74.  The order was not from "a juvenile court," as 8 U.S.C. 1101(a)(27)(J)(i) requires.  Furthermore, the appellant "had reached the age of eighteen, and the juvenile courts in Connecticut therefore lacked jurisdiction to declare him dependent on the juvenile court or commit or place him in custody."  *Boyron* at 74.  Our "cramped reading" of 8 U.S.C. 1101(a)(27)(J)(i) in *Gonzalez* did not consider the USCIS Policy Manual's guidance or rely on any caselaw interpreting the relevant provision of the statute. *Velasquez* at 896, 898 (reversing appellate court that erroneously held "as a matter of law that Children are not eligible for SIJ classification because Mother — rather than a state agency — was awarded sole custody").

{¶ 18} A more fundamental problem with *Gonzalez* is that its language may be read as an invitation to the juvenile court to adjudicate a child's SIJ eligibility itself, which is decidedly not the function of the state juvenile court in the process.  *See Gonzalez*, 2018-Ohio-2410, at ¶ 11 (10th Dist.) (stating that "the evidence does not demonstrate that E.S. met the definition under 8 U.S.C. 1101(a)(27)(J)") and ¶ 12 (stating "neither requirement of 8 U.S.C. 1101(a)(27)(J)(i) was met").  Here, the juvenile court read *Gonzalez* to hold "that *in order to find a minor child eligible* for [SIJ] status, *the trial court would have to* look to the requirements of 8 U.S.C. 1101(a)(27)(J) and the two-pronged test contained therein." (Emphasis added.)  (Divorce Decree at 15.)  However, no state court "find[s]" a minor child eligible or ineligible for SIJ status.  *Id.*  "It is not the juvenile court's role to engage in an immigration analysis or decision," which is solely an issue of federal law.  *Recinos*, 473 Mass at 738.  *See also Nyquist v. Mauclet*, 432 U.S. 1, 10 (1977) (citing U.S. Const., art. I, § 8, cl. 4, and holding that "[c]ontrol over immigration and naturalization is entrusted exclusively to the Federal Government, and a State has no power to interfere").  Thus, "whether a child

qualifies for SIJ status and whether to grant or deny an immigrant child's application for SIJ status is beyond the jurisdiction of" the juvenile court, which only makes the predicate findings that USCIS relies on to adjudicate the petition. *Penate*, 477 Mass. at 274. And, as U.S.C. 1101(a)(27)(J)(i) states, "State law" is the basis for such findings. For this reason, it was error for the juvenile court to refuse to make the findings, as occurred here, based on its own conclusion that the children could not qualify under the INA definition of an SIJ based on our previous reading of the statute in *Gonzalez*. An appellate court "not only has the right, but is entrusted with the duty to examine its former decisions and, when reconciliation is impossible, to discard its former errors." *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 43. Accordingly, *Gonzalez v. Rodriguez*, 2018-Ohio-2410 (10th Dist.), is overruled.

{¶ 19} The juvenile court also erroneously ruled that because Ms. Vargas Pelaez had custody of her children, it could not determine that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law" under U.S.C. 1101(a)(27)(J)(i). (Divorce Decree at 15.) The court cited the definition of "abandoned" under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which "means the parents of a child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that ninety-day period." R.C. 3127.01(B)(1). The juvenile court also stated that the children did not qualify under R.C. 2151.011(C), which states that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." Because Ms. Vargas Pelaez "continually had custody of the minor children," and both statutes refer to "the parents" in the plural, the juvenile court stated that it could not "find that the children were abandoned." (Divorce Decree at 16.) A court may apply the R.C. 2151.011(C) presumption to only one parent, however, even if the other parent's actions do not qualify. *See*, *e.g.*, *In re C.D.*, 2024-Ohio-446, ¶ 12 (10th Dist.); *In re S.G.*, 2022-Ohio-1967, ¶ 62 (5th Dist.). Again, the question is whether there is a "basis found under State law" to find that "reunification . . . is not viable due to . . . abandonment" under state law. 8 U.S.C. 1101(a)(27)(J)(i). Here, where the evidence showed that the children's presumptive father had had no contact with them for many years, the juvenile court erred

by refusing to consider this sufficient to demonstrate that reunification was not viable due to abandonment.

{¶ 20} The juvenile court also erred by failing make a finding under the applicable Ohio law concerning the best interests of the children in the context of the requested SIJ findings. R.C. 3109.04(F)(1) provides the juvenile court with a framework for "determining the best interest of a child" in an allocation of custody proceeding. The statute states that "the court shall consider all relevant factors, including, but not limited to" a list of ten enumerated factors. R.C. 3109.04(F)(1). While the trial court referenced the R.C. 3109.04(F)(1) factors in its allocation of custody, it did not use the best interests standard in that provision to make the findings requested by Ms. Vargas Pelaez. Instead, the juvenile court stated that it "would have to find at a minimum that the minor children could not do well or would be in danger if they returned to their country of origin," a standard that it appears to have conjured out of whole cloth. (Divorce Decree at 17.)

{¶ 21} The juvenile court also faulted Ms. Vargas Pelaez for not providing evidence "that the minor children would not have housing, education or be without adequate care" in her home country, as well as "dismiss[ing] the idea" that her mother or aunt could care for the children during her testimony. *Id.* In fact, Ms. Vargas Pelaez testified that her mother was "an elderly person" that was "in no condition" to take care of her children after the recent death of her father, and that she "barely" communicated with a sister who she did not believe would be "suitable to take care of them." (Tr. at 17, 23.) More concerning is the juvenile court's assertion that "there was no evidence presented of any threat to the children's safety should they return to Mexico," in spite of Ms. Vargas Pelaez's account of her ex-husband's domestic abuse and alcohol abuse. (Divorce Decree at 17.) The juvenile court made no mention at all of this history in its discussion of the requested findings. In short, its account of the evidence in the record appears shaped to a narrative of its own making and bears little resemblance to the evidence Ms. Vargas Pelaez presented. The juvenile court's discussion is unreasonable, at times arbitrary, and amounts to an abuse of discretion. Accordingly, the first assignment of error is sustained.

{¶ 22} Pursuant to our authority under Article IV, Section 3(B)(2) of the Ohio Constitution to "affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district," we affirm the juvenile court's judgment

in part and modify it in part. The judgment is affirmed with regard to the juvenile court's judgment, including its rulings and orders granting divorce and legal custody, with the exception of Section E, captioned "ISSUE PRESENTED – Plaintiff-Wife's Request for Special Findings for Immigration Purposes," on pages 14 through 19 of the decision and judgment entry. The aforementioned section is vacated and the judgment is modified to include the following findings. *See In re A.M.A.*, 2023-Ohio-723, ¶ 8 (10th Dist.) (making findings relevant to U.S.C. 1101(a)(27)(J)(i) without remanding to juvenile court where evidence in the record "clearly establishe[d]" them).[3]

> **First**, the following findings incorporate the juvenile court's order of "sole legal custody" of the minor children, M.A. and M.N., whose full legal names appear in said order on page 14 of the judgment;
>
> **Second**, parental reunification between M.A. and M.N. with Mario Alberto Martinez Moreno is not viable under Ohio law because the testimony of Ms. Vargas Pelaez and Yamilet Guzman demonstrate an absence of contact between him and said children that far exceeds the 90-day threshold to constitute abandonment under either the presumption of abandonment under R.C. 2151.011(C) or the definition of same under R.C. 3127.01(B)(1);
>
> **Third**, it is not in the best interest of either child to be returned to their mother's country of nationality, Mexico, based on the factors applicable to a custody determination under R.C. 3109.04(F) in light of the evidence in the record. This

---

[3] The dissent distinguishes this case from *In re A.M.A.*, 2023-Ohio-723 (10th Dist.), and argues for remand instead of modifying the judgment to include the requested SIJ findings. In *In re A.M.A.*, we held that the juvenile court's decision to vacate its original entry making SIJ findings without notice or a hearing violated the due process rights of the applicant. In the dissent's view, because *In re A.M.A.* was "an extremely unusual case" and this case is "in no way similar," remand is warranted. (Dissent at ¶ 46.) However, the Ohio Constitution's grant of "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals" does not require novelty, unusual circumstances, or a due process violation as a prerequisite to appellate modification of a judgment. Ohio Const. art. IV, § 3(B)(2). *See also* App.R. 12(A)(1)(a) (stating that a court of appeals must "[r]eview and affirm, modify, or reverse the judgment or final order appealed"). As the Supreme Court of Ohio has recognized, modification of a judgment pursuant to either its appellate review under Article IV, § 2(B)(2)(f) of the Ohio Constitution or the "similar authority" of appellate courts under Article IV, § 3(B)(2) "can provide an equitable, economical, and efficient remedy" in lieu of remand. *State v. Williams*, 2016-Ohio-7658, ¶ 30. So too here, particularly because, as in *In re A.M.A.*, the "uncontroverted evidence in the record clearly establishes" the requested findings. *In re A.M.A.* at ¶ 8. Over two years have passed since Ms. Vargas Pelaez originally filed her complaint seeking SIJ findings. Given this elapse of time, we believe judicial economy to be the paramount concern. *See Bell v. Turner*, 2013-Ohio-1323, ¶ 20 (4th Dist.) (modifying judgment "[i]n the interest of judicial economy, rather than remand [it] to the trial court for further proceedings," noting as well that the appellate court has "the authority to render the judgment the trial court should have entered").

includes the wishes of the children's mother under R.C. 3109.04(F)(1)(a), the children's "interaction and interrelationship" with their mother under R.C. 3109.04(F)(1)(c), their currently thriving adjustment to "home, school, and community" under R.C. 3109.04(F)(1)(d), and the "mental and physical health" of the children under R.C. 3109.04(F)(1)(e), would be endangered by returning them to an environment where they might be exposed to the domestic abuse and substance abuse perpetrated by Mario Alberto Martinez Moreno.

## IV. Second Assignment of Error

{¶ 23} In the second assignment of error, Ms. Vargas Pelaez argues that the juvenile court abused its discretion when it assessed her fees and costs after having found that she qualified as an indigent litigant.

{¶ 24} An "indigent litigant" is defined as "a litigant who is unable to make an advance deposit or security for fees or costs as set forth in a civil action or proceeding." R.C. 2323.311(A). An applicant must file an affidavit of indigency containing a financial disclosure in order to qualify as an indigent litigant. R.C. 2323.311(B)(1). After filing the affidavit, a judge or magistrate will approve or deny the application to qualify as an indigent litigant if the applicant demonstrates an income below a statutorily defined threshold. R.C. 2323.311(B)(4). A judicial finding of indigency "shall excuse the indigent litigant from the obligation to prepay any subsequent fee or cost arising in the civil case or proceeding unless the court addresses the payment or nonpayment of that fee or cost specifically in a court order." R.C. 2323.311(B)(7). "The determination of indigency in this respect is typically granted liberally in order to preserve the due process rights of litigants and guarantee an access to judicial process and representation." *Evans v. Evans*, 2005-Ohio-5090, ¶ 23 (10th Dist.).

{¶ 25} After filing an affidavit of indigency, the trial court found Ms. Vargas Pelaez to be an indigent litigant under R.C. 2323.311 on April 3, 2023. Nevertheless, the juvenile court's final judgment ordered her to pay court costs. Because "courts traditionally waive filing fees and costs for indigent persons in order to promote the interests of justice," it was contradictory to the purpose of the indigency determination to assess such costs after approving her application. *Daugherty v. Ohio Dept. of Human Servs.*, 2001-Ohio-4382, ¶ 10 (10th Dist.). The language of the juvenile court's judgment suggests that this order

may have been in error, however. The juvenile court stated that "costs shall be paid from the deposits," but Ms. Vargas Pelaez's obligation to pay a deposit of costs had been waived pursuant to R.C. 2323.311(B)(7). (Divorce Decree at 21.) Accordingly, we sustain the second assignment of error and reverse the juvenile court's assessment of costs.

## V. Conclusion

{¶ 26} For the foregoing reasons, the first assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, is affirmed in part, reversed in part, and modified in part to include the special findings requested by Ms. Vargas Pelaez. In addition, the second assignment of error is sustained and the portion of the juvenile court's judgment imposing costs on Ms. Vargas Pelaez is reversed.

*Judgment affirmed in part, reversed in part, and modified in part.*

BOGGS, J., concurs.
DORRIAN, J., concurs in part and dissents in part.

DORRIAN, J., concurring in part and dissenting in part.

{¶ 27} I respectfully concur in part and dissent in part.

{¶ 28} With respect to Ms. Vargas Pelaez's first assignment of error, I agree with the majority that the trial court erred by denying Ms. Vargas Pelaez's request for Special Immigrant Juvenile ("SIJ") findings and concur in sustaining the first assignment of error. However, I would not have this court make the requested SIJ findings in the first instance with respect to the viability of reunification of the children with Mr. Martinez Moreno or whether it is in the children's best interest to return to Mexico, the country of the children and their parents' nationality and last habitual residence. Rather, I would remand to the trial court to enter findings on those issues pursuant to the proper interpretation of the law. Therefore, I respectfully concur in part and dissent in part.

{¶ 29} The federal statute defining "special immigrant" provides, in relevant part, that the term means an immigrant who is present in the United States "whom such a [juvenile] court has . . . placed under the custody of . . . an individual . . . appointed by a . . . juvenile court located in the United States, *and* whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis

found under State law[.]" (Emphasis added.) 8 U.S.C. 1101(a)(27)(J)(i).[4] *See* 8 C.F.R. 204.11(c)(1). The statute further provides that a "special immigrant" is an immigrant "for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence[.]" 8 U.S.C. 1101(a)(27)(J)(ii). *See* 8 C.F.R. 204.11(c)(2). Thus, as relevant to the facts of this case, under the plain language of the statute, an immigrant seeking SIJ status must establish as a prerequisite to being considered for SIJ status, that a juvenile court made three determinations: (1) that the individual has been placed under the custody of an individual appointed by a juvenile court ("custody determination"), (2) that reunification with 1 or both of the individual's parents is not viable due to abuse, neglect, abandonment, or similar grounds ("reunification determination"), and (3) that it would not be in the individual's best interest to be returned to the individual's or the parent's previous country of nationality or last habitual residence ("best interest determination"). In this case, the trial court denied Ms. Vargas Pelaez's request for SIJ findings because it concluded it could not make any of those determinations. For the following reasons, I would hold that the trial court's interpretation of the law, upon which it relied to conclude it could not make the determinations, was in error. I also emphasize that my analysis and interpretation only applies to the facts of this case, where an allocation of custody is being made pursuant to R.C. 3109.04 in a divorce case and in the context of considering whether to make determinations necessary for consideration of SIJ status, and specifically does not apply to dependency determinations in any other context.[5] I would then direct the trial court to consider the evidence presented pursuant to the proper interpretation of the law.

---

[4] 8 U.S.C. 1101 (a)(27)(J)(i) reads in full "special immigrant" means an immigrant who is present in the United States—"who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law[.]" My analysis focuses only on the custody element and not the dependency element.

[5] *See In re Riddle*, 79 Ohio St.3d 259, 262-63 (1997) (approving of the rationale of the Tenth District in *In re Crisp*, 1981 Ohio App. LEXIS 14731,*4-5 (10th Dist. Feb. 5, 1981), and *In re Darst*, 117 Ohio App. 374, 379 (10th Dist. 1963), that "if a child is receiving proper care from relatives to whom the parent had entrusted the child's care, then the child is not a dependent child under R.C. 2151.04").

## I. Custody Determination

{¶ 30} The trial court concluded it could not make a custody determination because Ms. Vargas Pelaez sought custody of her children without involvement of children services or any other agency, based on this court's precedent in *Gonzalez v. Rodriguez*, 2018-Ohio-2410 (10th Dist.), and the trial court's interpretation of this court's summary of the SIJ statute in *In re A.M.A.*, 2023-Ohio-723 (10th Dist.). (Nov. 20, 2023 Decision & Jgmt. Entry Divorce Decree at 15, 18-19.) I concur with the majority to the extent it overrules paragraphs 11 and 12 of the *Gonzalez* decision only as they apply to custody determinations, but not dependency determinations. I reach this decision based on the plain language of the statute and the persuasive case law and the United States Citizenship and Immigration Services ("USCIS") Policy Manual interpretation outlined by the majority. (*See* Majority Decision at ¶ 13-17.) Therefore, I would reject the trial court's conclusion that it could not make a custody determination in this case for purposes of the SIJ statute because Ms. Vargas Pelaez sought legal custody of her own children without the involvement of children services or any other agency. Furthermore, I would reject the trial court's interpretation of the *A.M.A.* decision as being a broad holding that custody determinations can only be made when a child is in the custody of someone other than the child's own parents. (*See* Divorce Decree at 18-19.) Rather, I would interpret this court's summary of SIJ status in paragraph two of the *A.M.A* decision as unique to the circumstances of that particular case.

{¶ 31} Further, notwithstanding the trial court's declaration that it could not make a custody determination, I would note that the trial court in fact made a custody determination for purposes of the SIJ statute in this case. The trial court here was exercising jurisdiction pursuant to Chapters 3105 and 3109 of the Revised Code in a case involving divorce and allocation of parental rights and responsibilities. In allocating parental rights and responsibilities, the trial court ordered that Ms. Vargas Pelaez "shall have sole legal custody of the parties' minor children." (Divorce Decree at 14.) Accordingly, the trial court "placed [the children] under the custody of . . . an individual . . . appointed by a State or juvenile court located in the United States." 8 U.S.C. 1101(a)(27)(J)(i).

## II. Reunification Determination

{¶ 32} The trial court found that the children did not meet the criteria for it to make a reunification determination, based on the court's interpretation of (1) paragraph 13 of the *Gonzalez* decision; (2) R.C. 2151.03 regarding the definition of neglect (3) R.C. 3127.01(B)(1)[6] and 2151.011(C) regarding the definition of abandonment; and (4) R.C. 2151.031 regarding the definition of abuse. (Divorce Decree at 15-18.)

{¶ 33} First, I concur with the majority to the extent it overrules paragraph 13 of the *Gonzalez* decision, which held that "a child who is reunified with *a* parent will not meet [the] definition [outlined at 8 U.S.C. 1101(a)(27)(J)(i)]." (Emphasis added.) *Gonzalez*, 2018-Ohio-2410, at ¶ 13 (10th Dist.). I reach this decision based on the plain language[7] of the statute, which states "and whose reunification *with 1 or both* of the immigrant's parents is not viable due to abuse, neglect, [or] abandonment[.]" (Emphasis added.) 8 U.S.C. 1101(a)(27)(J)(i).

{¶ 34} Second, with regard to the trial court's interpretation of the relevant statutes, I note that underlying the trial court's refusal to make a reunification determination appears to be a conclusion that it cannot find a child to be neglected, abandoned, or abused, and therefore cannot find that reunification is not viable, unless *both* of the parents have neglected, abandoned, or abused the child. To put it another way, the trial court determined it could not make a reunification determination because the children had not been neglected, abandoned, or abused by Ms. Vargas Pelaez. The trial court reasoned that the children did not qualify for a reunification determination because they were reunified with one parent, i.e., Ms. Vargas Pelaez, even if reunification was not viable with the other parent, i.e., Mr. Martinez Moreno. I believe the trial court erred in its interpretation of the relevant statutes.

---

[6] R.C. 3127.01 provides definitions of terms "as used in sections 3127.01 to 3127.53 of the Revised Code." R.C. 3127.01(B). Those sections of the Revised Code encompass Ohio's version of the Uniform Child Custody Jurisdiction and Enforcement Act. R.C. 3127.01(A); Sub.S.B. No. 185, 150 Ohio Laws, Part IV, 8042. *See Slaughter v. Slaughter*, 2012-Ohio-3973, ¶ 17 (10th Dist.) (referring to R.C. Chapter 3127 as "Ohio's codification of the Uniform Child Custody Jurisdiction and Enforcement Act"). In the case before us, however, the trial court was exercising jurisdiction to determine allocation of parental rights and responsibilities pursuant to R.C. 3109.04.

[7] I also do not find to be persuasive or dispositive to this case the factual holding in *Boyron v. Lynch*, 604 Fed.Appx. 72, 74 (2d Cir. 2015).

{¶ 35} I limit my following analysis only to the trial court's determination that it could not make a reunification determination due to neglect.[8] And again I emphasize that the analysis is limited to the facts of this case where an allocation of custody is being made pursuant to R.C. 3109.04 in a divorce case and in the context of considering whether to make determinations necessary for consideration of SIJ status, specifically not to neglect determinations in any other context.[9] As noted above, in the case before us the court was exercising jurisdiction to determine allocation of parental rights and responsibilities pursuant to R.C. 3109.04. R.C. 3109.04(J)(3) defines the term "neglected child" as having the same meaning as in R.C. 2151.03, which sets forth seven scenarios in which a child could be considered a "neglected child." Six of the scenarios, set forth in R.C. 2151.03(A)(2) through (7), refer to actions or omissions by a child's "parents, guardian, or custodian." In determining that the children did not qualify as neglected, the trial judge appears to have focused on this clause's use of the plural in referencing "parents." The trial court observed that Ms. Vargas Pelaez "testified that either she or the children's maternal grandmother were meeting all of their needs throughout the children's young lives" and that "[t]here was no evidence that the children's needs were not met at any point in time." (Divorce Decree at 17.)

{¶ 36} By focusing solely on the plural reference to "parents" in R.C. 2151.03, the trial court ignored that R.C. 3109.04 directs the court to consider whether *either* parent has neglected the child. Among the factors the trial court must consider when determining the best interest of a child under R.C. 3109.04 is "whether there is reason to believe that *either* parent has acted in a manner resulting in a child being an *abused* child or a *neglected* child." (Emphasis added.) R.C. 3109.04(F)(1)(h). Furthermore, the trial court's approach fails to

---

[8] The factors supporting a reunification determination are phrased in the disjunctive—i.e., whether "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, *or* a similar basis found under state law." (Emphasis added.) 8 U.S.C. 1101(a)(27)(J)(i). Therefore, if the evidence presented to the court is sufficient to make a reunification determination based on neglect, it would not be necessary for the trial court also to find that reunification with Mr. Martinez Moreno was not viable due to abuse or abandonment. *See Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, 2019-Ohio-4499, ¶ 12 (explaining that where a statute sets forth grounds for reversal of an administrative order in a disjunctive list, the presence of any one of the listed grounds would justify reversal by itself).

[9] *See Riddle*, 79 Ohio St.3d at 263 (generally accepting the reasoning underlying the Tenth District decision in *In re Reese*, 4 Ohio App.3d 59, 62 (10th Dist. 1982), that when considering a determination of neglect pursuant to R.C. 2151.03(A), "if [a] relative was providing proper care pursuant to [an] informal agreement, the child could not be found to be lacking 'proper parental care' under R.C. 2151.05, so that the child was not a neglected child").

appreciate the interaction between federal and state law in the context of SIJ findings. The SIJ statute expressly refers to whether "reunification with *1 or both* of the immigrant's parents is not viable due to . . . neglect[.]" (Emphasis added.) 8 U.S.C. 1101(a)(27)(J)(i). By limiting its review to whether the evidence established that both Ms. Vargas Pelaez and Mr. Martinez Moreno neglected the children, the trial court effectively deleted the "1 or" language from 8 U.S.C. 1101(a)(27)(J)(i). "[Courts] are free neither to disregard or delete portions of [a] statute through interpretation, nor to insert language not present." *Hall v. Banc One Mgt. Corp.*, 2007-Ohio-4640, ¶ 24.

{¶ 37} Accordingly, the trial court erred in not making a reunification determination due to neglect based on its interpretation of the relevant statutes, and I would remand to the trial court to apply the interpretation above to the facts before it.[10]

## III. Best Interest Determination

{¶ 38} The trial court refused to make a best interest determination (1) because it did not have sufficient evidence "to find at a minimum that the minor children could not do well or would be in danger if they were returned to their country of origin"; and (2) because the determination was moot or "at least one that is not yet ripe." (Divorce Decree at 17, 18.)

{¶ 39} First, the trial court does not point to any authority to support its conclusion that it would have to find at a minimum that the minor children could not do well or would be in danger if returned to Mexico. Certainly, such findings would be relevant to a best interest determination; however, the trial court points to no authority they are necessary to make a best interest determination.

{¶ 40} The USCIS Policy Manual, explains as follows regarding the best interest determination:

> While juvenile courts do not have the authority to make decisions on the removal or deportation of a child to another

---

[10] The trial court's decision summarized portions of Ms. Vargas Pelaez's testimony which could be relevant to a determination regarding nonviability of reunification due to neglect. The trial court noted that Ms. Vargas Pelaez "stated that the children have not had contact with [Mr. Martinez Moreno] in approximately ten (10) years" and that Ms. Vargas Pelaez "does not know where [Mr. Martinez Moreno] resides at this time." (Divorce Decree at 16.) In naming Ms. Vargas Pelaez the sole custodian of the children, the trial court also observed that Ms. Vargas Pelaez "stated that she does not believe [Mr. Martinez Moreno] is fit enough to care for the children [and that he] battles with an addiction to narcotics and alcoholism." (Divorce Decree at 11.) The trial court asserted that this testimony regarding Mr. Martinez Moreno's alcoholism and addiction issues "are of concern to the Court." (Divorce Decree at 12.)

country, it must be determined by the juvenile court (or in administrative proceedings recognized by the juvenile court) that it would not be in the best interest of the petitioner to be returned to the country of nationality or last habitual residence of the petitioner or the petitioner's parents. This requires the juvenile court to make an individualized assessment and consider the factors that it normally takes into account when making best interest determinations, and the record should reflect the factual basis for the juvenile court's determination.

The standards for making best interest determinations may vary between states, and the court may consider a number of factors related to the circumstances of the child and the circumstances and capacity of the child's potential caregiver(s). The child's safety and well-being are typically the paramount concern. For example, if the court places the child with a person in the United States under state law governing the juvenile court dependency or custody proceedings, and the order includes facts reflecting that the caregiver has provided a loving home, bonded with the child, and is the best person available to provide for the child, this would likely constitute a sufficient factual basis in support of a qualifying best interest determination to warrant DHS consent. The analysis would not change even if the chosen caregiver is a parent. USCIS defers to the juvenile court in making this determination and as such does not require the court to conduct any analysis other than what is required under state law.

USCIS Policy Manual, Vol. 6, Part J, Ch.2(C)(3), https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2 (accessed August 27, 2025) [https://perma.cc/UK6U-E8VY].

{¶ 41} I recognize that the best interest determination with regard to custody differs from the best interest determination with regard to SIJ status.  As to custody, R.C. 3109.04(B) requires the court to "take into account that which would be in the best interest of the children" when allocating parental rights and responsibilities for the care of children.  As to SIJ status, the court must consider whether "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence[.]"  8 U.S.C. 1101(a)(27)(J)(ii).  In this case, for the purpose of awarding custody, the trial court found it "to be in the best interests of the minor children" for Ms. Vargas Pelaez to have sole legal custody of the children.  (Divorce Decree at 14.)  In reaching that conclusion the trial court considered the factors set forth in

R.C. 3109.04(F)(1). (Divorce Decree at 10-14.) Although a court is not required by statute to consider the same factors when making a best interest determination for SIJ status, there are factors that overlap and may be relevant to such consideration. The USCIS Policy Manual persuasively suggests the juvenile court to consider the same when relevant.

{¶ 42} Second, again, the trial court points to no authority to support its conclusion that the fact that Ms. Vargas Pelaez had been awarded sole legal custody and had indicated she had no plans to return to Mexico rendered the question of whether it was in the children's best interest to return to Mexico "to be a moot issue or at least one that is not yet ripe." (Divorce Decree at 18.) The trial court stated that because Ms. Vargas Pelaez had custody of the children, "[i]f she determines that it would not be safe or simply does not wish to return to her country of origin, she can unilaterally make the decision to not to send the children there." (Divorce Decree at 18.) This question is neither moot nor not yet ripe.

{¶ 43} Accordingly, the trial court erred in not making a best interest determination based on its unsupported interpretation of the relevant statutes. I would remand this case to the trial court with instructions to consider relevant evidence related to the best interest factors in R.C. 3109.04(F)(1) and any other relevant evidence to the best interest determination for SIJ status.[11]

---

[11] R.C. 3109.04(F)(1) directs the trial court, when considering allocation of parental rights and responsibilities, to consider all relevant factors, including those listed in the statute. In conducting the R.C. 3109.04(F)(1) analysis, the trial court observed portions of Ms. Vargas Pelaez's testimony which could be relevant to a determination regarding whether it would not be in the children's best interest to be returned to Mexico. For instance, regarding R.C. 3109.04(F)(1)(a), the trial court noted that Ms. Vargas Pelaez "stated that she does not believe [Mr. Martinez Moreno] is fit enough to care for the children" and "testified as to [Mr. Martinez Moreno's] battles with an addiction to narcotics and alcoholism." (Divorce Decree at 11.) Ms. Vargas Pelaez "also noted that [Mr. Martinez Moreno] physically abused her in front of their son." (Divorce Decree at 11.) Regarding R.C. 3109.04(F)(1)(c), the trial court declared that it "presumes that the children have always resided together and have a bonded relationship" because no contradictory testimony was provided. (Divorce Decree at 11.) The trial court noted Ms. Vargas Pelaez's testimony "that the children are doing well with her since they moved to the United States." (Divorce Decree at 11.) The trial court also cited Ms. Vargas Pelaez's testimony that the children had a relationship with their maternal grandmother, with whom they resided for nearly a year, and with other maternal aunts and uncles who reside in both in the United States and Mexico. The trial court noted Ms. Vargas Pelaez's testimony that the children "barely" had a relationship with Mr. Martinez Moreno's extended family and that "she and the children have not had any substantial contact with [Mr. Martinez Moreno] since 2013." (Divorce Decree at 11-12.) The trial court further noted that Ms. Vargas Pelaez stated she did not know Mr. Martinez Moreno's current whereabouts. Regarding R.C. 3109.04(F)(1)(d), the trial court noted testimony that the children had arrived in the United States in October 2022 and had resided in the country for approximately one year. It cited Ms. Vargas Pelaez's testimony that the children "are doing well, are going to school, receiving good grades, and have adjusted to their new life in the United States." (Divorce Decree at 12.) Regarding R.C. 3109.04(F)(1)(e), the trial court asserted "[Ms. Vargas Pelaez's] testimony about [Mr. Martinez Moreno's] alcoholism and addiction issues are of concern to the Court." (Divorce Decree at 12.) Regarding R.C. 3109.04(F)(1)(f), the trial court cited Ms. Vargas Pelaez's testimony that "she was the primary caregiver

## IV. Remand to the Trial Court

{¶ 44} As noted above, I would find the trial court erred in its interpretation of the law applicable to SIJ findings, and I concur with the majority that paragraphs 11 and 12, only as they apply to custody determinations, but not dependency determinations, and paragraph 13 of *Gonzalez* should be overturned. However, I dissent from the majority's consideration of the evidence and making of SIJ findings in the first instance.

{¶ 45} In concluding it is appropriate to make the SIJ findings in the first instance, the majority relied on the *A.M.A* decision. *A.M.A.* was an extremely unusual case where the juvenile court, ruling on a custody case where SIJ findings had been requested, granted a request for SIJ findings and then the following day, without notice or explanation, reversed itself and withdrew those findings:

> [A]t the conclusion of the hearing the trial court signed and issued an order that included the special [SIJ] findings requested. . . .
>
> But the following day, and without notice to appellant, A.M.A., or their counsel, the trial court filed a new "Order to Vacate Emergency Custody Order" and a new "Emergency Custody Order" ordering that "[D.A.A.] is hereby granted TEMPORARY EMERGENCY CUSTODY of [A.M.A.]," but concluded that "Plaintiff's request for special findings is not well taken." . . . The court referred the case to a magistrate and set a further hearing for August 2, 2022 and this appeal followed.

(Emphasis in original.) *In re A.M.A.*, 2023-Ohio-723, at ¶ 5-6 (10th Dist.). On appeal, the appellant asserted that the trial court violated his and the child's right to procedural due process under the U.S. and Ohio Constitutions by ignoring Juv.R. 14(C) and Civ.R.52. *Id.* at ¶ 7. This court determined that when the juvenile court vacated its findings without a hearing it violated Juv.R. 14(C) and appellant's right to due process. This court held:

for the children until they stayed with their maternal grandmother for nearly a year" and that "[s]ince the children were reunited with [Ms. Vargas Pelaez], she has resumed the role of their primary caretaker." (Divorce Decree at 12.) The trial court also cited Ms. Vargas Pelaez's testimony that she and M.A. had not seen Mr. Martinez Moreno since 2013, which was prior to the birth of M.N. Regarding R.C. 3109.04(F)(1)(h), the trial court noted there had been no testimony that Ms. Vargas Pelaez or Mr. Martinez Moreno had ever been convicted or pled guilty of any of the subject offenses but also noted that "[Ms. Vargas Pelaez] testified that [Mr. Martinez Moreno] hit [her] in front of the parties' son." (Divorce Decree at 13.) Regarding R.C. 3109.04(F)(1)(j), the trial court noted there was no testimony that Ms. Vargas Pelaez planned to relocate outside out of Ohio. The trial court found that Mr. Martinez Moreno's whereabouts were unknown and that Ms. Vargas Pelaez had last seen him in Mexico.

> We agree with the appellant's argument. The trial court vacated its prior orders without a hearing and notice, in violation of Juv.R. 14(C). And given the fact that the trial court's decision has the effect of denying A.M.A. eligibility for a legal immigration status, it clearly violates the procedural due process rights of the parties. But given our review of the record, we believe it is appropriate to go further. The uncontroverted evidence in the record clearly establishes that A.M.A. is an "immigrant who is present in the United States . . . who has been declared dependent . . . whose reunification with one or both of the immigrant's parents is not viable . . . [and] that it would not be in [his] best interest to be returned" to Ghana. Compare with 8 U.S.C. 1101(a)(27)(J). Moreover, the record does not contain any factual or legal basis for the trial court's decision to vacate the special findings it issued on June 1, 2022—accordingly, we conclude that it was a clear abuse of the trial court's discretion to do so.
>
> For the foregoing reasons, we reverse the trial court's June 2, 2022 "Order to Vacate Emergency Custody Order," and vacate the June 2, 2022 "Emergency Custody Order." Accordingly, the trial court's June 1, 2022 order, including the requested special, findings remains in effect.

*Id.* at ¶ 8-9.

{¶ 46} The circumstances in the case before us are in no way similar to the circumstances in the *A.M.A.* case. Furthermore, this case is not an extremely unusual case that warrants our making the SIJ findings based on the evidence in the record in the first instance pursuant to this court's authority under Article IV, Section 3(B)(2) of the Ohio Constitution or App.R. 12.

{¶ 47} Therefore, I would remand this case to the trial court to consider the SIJ findings in the first instance. Furthermore, given the age of the eldest child in this case, 17, I would order the trial court, upon remand, to apply the proper interpretation of the relevant statutes, consider the evidence and make its determination regarding the SIJ findings within 30 days of the filing of this court's judgment entry.

{¶ 48} Finally, I concur in full with the majority's resolution of Ms. Vargas Pelaez's second assignment of error and I would reverse the juvenile court's assessment of costs.

—————————————