[Cite as *In re P.A.*, 2026-Ohio-660.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In the matter of: [P.A.]                    :

[I.D.]                                      :

           Plaintiff-Appellant,        :               No. 24AP-693
                                   (CP.C. No. 23JU-10526)

v.

                              :               (REGULAR CALENDAR)

[R.A.] et al.,

           Defendant-Appellees.        :

---

D E C I S I O N

Rendered on February 26, 2026

---

**On brief:** *Kimberly P. Jordan*, for appellant. **Argued:** *Kimberly P. Jordan.*

---

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations, Juvenile Branch

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, I.D., appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which dismissed his complaint seeking custody of his half-brother, P.A.

{¶ 2} I.D. filed his complaint on October 16, 2023, and requested an order pursuant to R.C. 3109.04 granting him legal custody of P.A., who was 17 years old at the time the complaint was filed and had travelled to the United States from Ghana. I.D. requested that the court make special findings that P.A. had been abandoned by and could not be reunited with his parents and that it was not in P.A.'s best interest to return to Ghana. These findings would permit P.A. to obtain an immigration status that is available to noncitizen children who are found in the United States, placed in the legal custody of a legal resident or citizen other than the child's own parents by the state juvenile court having jurisdiction over the case, and that juvenile court makes factual findings regarding that child's placement and

need for both custody and legal status. *See generally In re A.M.A.*, 2023-Ohio-723 (10th Dist.).

{¶ 3}   I.D.'s complaint asserted that P.A. was born in Ghana in 2006, that his father had died in a car accident in January 2008, that his mother was mentally ill, that she was not caring for her son, and that P.A. was living with I.D.  It also alleged that P.A. suffered intimidation and physical violence while living in Ghana because he was bisexual, that he feared for his life, and that he fled from Ghana to Ecuador and then traveled to the United States in January 2023.

{¶ 4}   In addition to requesting that I.D. be given custody of P.A., the complaint requested that the court find that P.A. could not be reunified with his father or mother due to abandonment and that it was not in P.A.'s best interest to be returned to Ghana.  Along with the complaint, I.D. filed exhibits purporting to be P.A.'s birth certificate and the death certificate for P.A.'s father.

{¶ 5}   P.A.'s mother was served by publication. But it appears from the record that the juvenile court was concerned with P.A.'s paternity, and on December 12, 2023, the juvenile court magistrate granted a continuance at I.D.'s request to perfect service on a "John Doe" defendant.  That defendant was served by publication later in December 2023, and the magistrate scheduled a hearing on the case for February 12, 2024.

{¶ 6}   Still, the complaint was unanswered and uncontested, and I.D. was the only witness who appeared and testified at the February 2024 hearing. I.D. testified that P.A. was his half-brother, explaining that they shared the same mother but had different fathers. I.D. testified that P.A.'s father had died in 2008, and identified a copy of his death certificate.  I.D. also stated that their mother had disowned P.A. about one year earlier because of religious objections to his sexual orientation, and that she had not attempted to contact either I.D. or P.A. during the prior 90 days.

{¶ 7}   I.D. further stated that while living in Ghana, P.A. and his male romantic partner were attacked and beaten by members of the community where they lived, who also had religious objections to their sexual orientation.  He testified that P.A.'s romantic partner was killed in the attack, that the attackers believed P.A. to be dead because he fainted, and that other individuals transported P.A. to a hospital where he was treated.  I.D. testified that P.A. fled from Ghana after leaving the hospital, first traveling to Ecuador, then

through Mexico and entering the United States. All this testimony was admitted without objection and these facts are not contested.

{¶ 8} I.D. stated that P.A. had lived in his home for approximately a year, together with I.D.'s wife and daughter, and a minor cousin over whom I.D. had been granted custody. P.A. attended high school and aspired to join the military after graduation. I.D. testified he and his wife planned to care for P.A., and that he sought to be awarded custody of P.A. so that he could ensure P.A.'s care.

{¶ 9} I.D. further testified that he believed it would not be in P.A.'s best interest to be returned to Ghana and that P.A.'s life would be in danger if he returned. I.D. stated that their mother would not protect P.A. from members of the community who wished to harm him because she shared the same religious objections to P.A.'s sexual orientation. Accordingly, I.D. requested the court to issue findings that would allow P.A. to apply for "Special Immigrant Juvenile" ("SIJ") status, allowing him to apply to legally remain in the United States.

{¶ 10} Pursuant to 8 U.S.C. § 1101(a)(27)(J), SIJ status can be only granted to "an immigrant who is present in the United States"

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence . . . .

8 U.S.C. § 1101(a)(27)(J). This court has decided several cases regarding the factfinding required to seek SIJ status, and we do not believe that it requires a particularly searching factual or legal inquiry on the part of trial courts. *See, e.g.*, *In re A.M.A.*, 2023-Ohio-723, ¶ 4-5 (10th Dist.) (quoting federal statute and attorney's transcript argument to trial court), and *Vargas Pelaez v. Martinez Moreno*, 2025-Ohio-5532, ¶ 9-22 (10th Dist.) (describing in detail application of SIJ statutory scheme, finding trial court erred by not making special

findings, and modifying trial court's judgment to include requested special findings). This is especially true where, as is true here, the facts underlying those findings are uncontested. *See In re A.M.A.* at ¶ 8 (reviewing uncontested evidence and concluding that on that basis trial court's entry vacating special findings to be a "clear abuse of the trial court's discretion").

{¶ 11} At the close of the hearing, the magistrate indicated she would issue a decision that would be submitted to the juvenile court judge for review. The magistrate stated she would try to issue the decision as quickly as she could. The magistrate was aware of the need for P.A. to have a legally secure placement as soon as possible, and also that his age required the court to act with dispatch.

{¶ 12} But notwithstanding, a decision from the magistrate was not forthcoming. Although the record is not entirely clear, at some point shortly after the hearing, the magistrate submitted a proposed decision to the trial court for approval, but that decision was never filed on the case docket or served on I.D.'s counsel. It appears from the record that the trial court refused to approve the magistrate's decision, but then took no further direct action. Moreover, despite I.D.'s counsel repeatedly contacting court staff and seeking information about the status of the case, counsel was not informed that the court was reserving decision, and was never told that the trial court apparently desired more information prior to approving the magistrate's decision.

{¶ 13} In June 2024—249 days after the complaint was filed and 131 days after the hearing before the magistrate—P.A. turned 18 years old. On August 26, 2024, the case was continued at the trial court's request, ostensibly for the purpose of scheduling a hearing before the trial judge. On September 24, 2024, I.D.'s counsel filed a memorandum asserting that the court had continuing jurisdiction over P.A., notwithstanding the fact that he had turned 18 years old, because a custody order and the other requested special findings would enable P.A. to apply for SIJ status.

{¶ 14} The hearing before the trial judge occurred on September 26, 2024, and again, it was uncontested and only I.D. testified at the hearing. At the beginning of the hearing, the trial judge asserted that "the Magistrate had published [a decision] on this one and the Court did not approve the Magistrate's Decision and it was here now for a hearing to - - for a complaint or for movant here to supplement. (Sept. 26, 2024 Tr. at 4.). I.D.'s

counsel advised the trial court that she was unaware of the magistrate's proposed decision and had not been served with a copy of it:

> [Defendant's Counsel]: Thank you. I was not aware that the Magistrate published a decision. Today is the first time I'm hearing of that.
>
> [The Court]: Yes. Yeah. There was a decision published. You should have got it but - -
>
> Staff Attorney: No.
>
> [Defendant's Counsel]: I never received it.
>
> [The Court]: Oh.
>
> [Defendant's Counsel]: I asked the bailiff numerous times about it. She told me she couldn't tell me anything. I emailed your staff attorney about a month ago. She told me she had not seen anything. This is the first time hearing that there actually was a decision.

*Id*. at 4-5. The trial court later noted that the magistrate's decision was "unpublished." (Oct. 22, 2024 Jgmt. Entry on Pl.'s Compl. for Custody at 2.) Again, that purported decision does not appear on the trial court's docket, and it is not part of the record on appeal.

{¶ 15} I.D. testified at the September 26, 2024 hearing that he had been notified earlier in the month that his and P.A.'s mother had died, and there had been no contact or reconciliation between P.A. and their mother between the February 12, 2024 hearing and her death. I.D. also testified that the high school P.A. attended had requested documentation to establish residency and guardianship so that P.A. could continue to attend the school.

{¶ 16} The trial court and I.D.'s counsel then engaged in a lengthy dialogue about whether the case was moot because P.A. had turned 18 years old. (Sept. 26, 2024 Tr. at 13-21.) The court apparently took the opinion that it had lost jurisdiction when P.A. turned 18, some six months after the hearing before the magistrate. The trial court did not explain the delay in decision or provide any basis for holding the case, and did not examine why I.D.'s counsel was not informed of its concerns about the decision during that period. In response to the trial court's suggestion that the case was now moot, I.D.'s counsel argued that failure to grant custody and enter the requested findings would impose collateral consequences

that precluded a finding of mootness by preventing P.A. from applying to the federal government for SIJ status.

{¶ 17} On October 22, 2024, the trial court issued a judgment entry dismissing I.D.'s complaint. The court held that it lost jurisdiction over the complaint upon the occurrence of P.A.'s 18th birthday, and despite its position at the commencement of the hearing that the magistrate had already issued a decision, no factual findings or temporary or emergency orders had been made before P.A. turned 18 years old. The court concluded it could not issue an order giving I.D. custody over P.A. because P.A. had reached the age of majority and therefore that the case was moot:

> *The hearing was set before this Court as the Magistrate had proposed an unpublished Magistrate's Decision to this Court for signature. The Court found the Decision was incomplete and missing information that this Court deemed crucial to the resolution of the case. The matter was set for further hearing before this Court so that said information could be obtained.* The subject hearing was recorded.
>
> . . .
>
> In this case, this Court notes that in the prayer for relief of the Complaint filed on October 16, 2023, the Plaintiff requested the Court award him legal custody of the subject youth, [P.A.] (DOB: 6/21/2006), and find that reunification of the youth with his mother, [J.B.], was not possible due to abandonment, and that it was not in the youth's best interests to return to Ghana. The initial hearing before the Magistrate was scheduled for December 12, 2023. That hearing was continued to February 12, 2024, as Plaintiff had not completed service on all parties. The hearing on February 12, 2024, took place before Magistrate Matthews. A copy of the transcript of that proceeding was later filed on September 24, 2024.
>
> This Court reviewed the unpublished Magistrate's Decision as well as the recording and transcript of the proceeding before the Magistrate. The transcript documents that at the hearing on February 12, 2024, the Magistrate heard testimony from Plaintiff. . . . *The Magistrate later proposed a Magistrate's Decision to this Court that this Court felt lacked sufficient information. Therefore, this Court set this matter for hearing before the Judge on September 26, 2024.*
>
> The Court notes that at the time of the hearing before this Court on September 26, 2024, the subject youth, [P.A.] was eighteen

(18) years old. By statute and caselaw, this Court loses jurisdiction of juveniles at the age of eighteen years old who are not previously found to be abused, neglected, dependent or delinquent. In this case there was no dispositional order put in place prior to the subject youth's eighteenth birthday. Moreover, there were no temporary orders put into place before the youth turned eighteen years old. Further, there were never any allegations by any party in the Complaint, subsequent filings, or at any hearing before either the Judge or Magistrate that this child was under any legal disability. Thus, any jurisdiction this Court may have had was lost in when the youth turned eighteen. Therefore, this Court is left with no option but to dismiss the case.

(Emphasis added.) (Oct. 22, 2024 Jgmt. Entry at 1-3.) I.D. has now appealed to this court, asserting a single assignment of error:

> The lower court erred and abused its discretion in dismissing appellant's complaint as moot when the court failed to issue a timely custody decision before the child turned 18 years old and there are ongoing collateral consequences.

{¶ 18} We recently set forth the general standards of review governing this assignment of error:

> In previous appeals arising from a party seeking findings from the juvenile court in order to petition for SIJ status, we did not specify the standard of review applied. *See Gonzalez v. Rodriguez*, 2018-Ohio-2410, 115 N.E.3d 718 (10th Dist.) (affirming juvenile court's denial of request to make SIJ findings based on interpretation of 8 U.S.C. 1101(a)(27)(J) that parties did qualify as a matter of law) and *In re A.M.A.*, 2023-Ohio-723, ¶ 8 (10th Dist.) (reversing juvenile court's sua sponte decision to "vacate[] its prior orders" with SIJ findings "without a hearing and notice" because it "clearly violate[d] the procedural due process rights of the parties"). However, both *Gonzalez* and *In re A.M.A.* addressed issues of law, which are reviewed "de novo on appeal." *Ceccarelli v. Levin*, 127 Ohio St. 3d 231, 2010-Ohio-5681, ¶ 8, 938 N.E.2d 342. Here, we apply that standard to the juvenile court's resolution of legal issues, such as its interpretation of 8 U.S.C. 1101(a)(27)(J). *See id.* (applying de novo review to "question of statutory construction").
>
> However, a juvenile court makes the findings that are a prerequisite to SIJ status "under State law." 8 U.S.C. 1101(a)(27)(J). And here, where the court acted as a factfinder

in a custody proceeding under R.C. 3109.04, an abuse-of-discretion standard applies to our review of its factual determinations. *E.g., Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Under that standard, a trial court abuses its discretion if its ruling is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140 (1983). "An unreasonable decision is one that is unsupported by a sound reasoning process." *Lias v. Beekman*, 2007-Ohio-5737, ¶ 12 (10th Dist.), citing *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An arbitrary ruling lacks an " 'adequate determining principle' " and is " 'not governed by any fixed rules or standard.' " *Downey v. 610 Morrison Rd., L.L.C.*, 2008-Ohio-3524, ¶ 11 (10th Dist.), quoting *Dayton ex rel. Scandrick v. McGee,* 67 Ohio St.2d 356, 359, 423 N.E.2d 1095 (1981). An unconscionable ruling " 'affront[s] the sense of justice, decency, or reasonableness.' " *U.S. Bank Natl. Assn. v. Collier*, 2008-Ohio-6817, ¶ 19 (10th Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004).

*Vargas Pelaez*, 2025-Ohio-5532, at ¶ 7-8 (10th Dist.).  Normally, because there are no disputed findings of fact in this case, we would be limited to reviewing the trial court's judgment on the legal issue of jurisdiction.  But on review of the record, we have identified an issue that must take precedence to addressing that question.

{¶ 19} The relevant local rule provides that "Magistrates shall be appointed in accordance with Civil Rule 53, and shall have all powers conferred by said Rule," as well as referring to magistrates "*[a]ll complaints for custody filed in the Juvenile Branch of this court . . . .*" (Emphasis added.)  Franklin C.P., Dom. Rel. Div., Loc. R. 8.  *See also* Franklin C.P., Juv. Div. Loc. R. 20 ("Magistrates . . . shall conduct hearings in complaints initiated in the Juvenile Branch . . . for abuse, neglect and dependency.").  And while it is true that Civ.R. 53(D)(1)(b) provides that courts "may limit a reference [of a case to a magistrate] by specifying or limiting the magistrate's powers, including . . . directing the magistrate to receive and report evidence only," the record provides no suggestion that the trial court limited its reference of jurisdiction to the magistrate in this way. And under Sup.R. 40(A)(2), "cases submitted for determination after a court trial shall be decided within ninety days from the date the case was submitted."

{¶ 20} In short, given the general order of reference embodied in the local rule, the 90-day timeline for the decision, and the lack of any specific notice or order from the court

to the contrary, I.D. and his counsel were entitled to expect that the magistrate would issue a decision in the case within 90 days, and that the order would be subject to objections to the trial court as in the ordinary course of such cases. *See* Civ.R. 53(D)(3) ("Magistrate's Decision; Objections to Magistrate's Decision"), and Franklin C.P., Juv. Div., Loc. R. 8 ("A decision of a Magistrate may be reviewed by the assigned Judge of this Court by filing an Objection in accordance with Rule 40 of the Ohio Rules of Juvenile Procedure / Rule 53 of the Ohio Rules of Civil Procedure."). Moreover, the magistrate had assured both I.D. and his counsel that a decision would be released soon:

> What will happen from here is, I will issue a decision based on your testimony. That decision then goes up to the Judge to include his signature. Then it goes to the clerk's office. And then the clerks will send a copy to your attorney. So, you'll receive a copy from her. I'll try to get this out as quickly as I can.

(Feb. 12, 2024 Tr. at 22.)

{¶ 21} But a magistrate's decision was never issued, despite the magistrate's assurances, P.A.'s age, and the uncontested nature of the case. Based on the record before us, the decision was held from release because the trial court concluded that "it was incomplete and missing information that this Court deemed crucial to the resolution of the case." (Oct. 22, 2024 Jgmt. Entry at 1.) The nature of that "incomplete and missing information" is never specified in the record, not even in the final entry of the court dismissing the case.

{¶ 22} Upon determining that there was "incomplete and missing information," the appropriate action for the court would have been to reject the decision and direct the magistrate to issue an order denying the motion, or at least to issue an order directing the parties to supplement the record so that an order could be issued. Given this anomaly, we believe that the trial court's actions must be reviewed for plain error and prejudice to the I.D. Here, neither the court nor the magistrate took any action to notify the parties that the court needed additional information prior to the issuing a decision, even though I.D.'s counsel stated on the record that she had regularly checked with court personnel regarding the status of the case. Moreover, it seems that I.D.'s counsel was not informed that the case had been taken out of the hands of the magistrate by the trial judge, and there is certainly no indication in the docket that this had occurred.

{¶ 23} This was an uncontested case—P.A.'s father was dead and his mother was both in Ghana and uninvolved in his life. And there is certainly no doubt that children under the age of majority are required to have custodians to protect them under Ohio law. The court's action in delaying a decision in an uncontested custody case is frankly inexplicable, and we have little difficulty concluding that the trial court's actions in refusing to sign the magistrate's decision and holding that decision for some six months without notifying the parties was erroneous, particularly in light of the representations made to the parties and the necessity to resolve such matters in the normal and ordinary course of law.

{¶ 24} In response to I.D.'s contention that the court had violated Sup.R. 40(A)(2) and "took too long in making a decision after the hearing of February 12, 2024," the court justified its delay as follows:

> The Court reviewed the Magistrate's proposed Magistrate's Decision and reviewed the record. This Court found that there was information lacking which would have been critical in making a decision on the proposed relief that the Plaintiff requested. Therefore, the matter was set for further hearing. Due to this Court's congested docket, the Court was able to hear the matter on September 26, 2024. It issues this decision within a timely manner after that hearing. The Court is allowed to take time and weigh the evidence before making any findings or decision. To expect a quick decision on every case is to place unrealistically high expectations on an overburdened court system. Thus, this Court does not find this decision to be untimely.

(Oct. 22, 2024 Jgmt. Entry at 5.)

{¶ 25} This analysis does not stand up to scrutiny. Specifically, the record is undisputed that the September 26, 2024 date upon which the trial court relies was not scheduled until August 21, 2024, and that hearing was scheduled at the court's request. (Aug. 26, 2024 Mot. & Mag.'s Order.) Accordingly, the court was already three months beyond the Sup.R. 40(A)(2) 90-day deadline at the time it scheduled the hearing. Moreover, the trial court did not identify what precise "information [was] lacking which would have been critical in making a decision on the proposed relief," even during the September 26 hearing—the hearing that presumably was intended to resolve that question. And finally, we simply do not think that the "overburdened" trial court's "congested docket" is a sufficient explanation for the delay in question—this case was uncontested, the facts were undisputed, the legal

relief sought was uncomplicated, and without a more cogent explanation, we view the trial court's actions and explanations of those actions with skepticism. *Compare In re A.M.A.*, 2023-Ohio-723, at ¶ 8 (10th Dist.) and *Vargas Pelaez*, 2025-Ohio-5532, at ¶ 19-21 (10th Dist.) (both describing unreasonable errors in SIJ proceedings by the same judge who presided over this case). It is true that the trial court did not determine this case until after P.A. had turned 18. But that was not due to any action by I.D. or P.A.—rather, it was the result of errors by the trial court.

{¶ 26} In sum, we believe that the departure from normal proceedings in the handling of this case prejudiced both I.D. and P.A. well before the definitional deadline set forth in R.C. 2151.011(B)(6). Moreover, undisputed evidence in the record shows both that P.A. was an abandoned child as defined under R.C. 2151.011(C), and also that it was not his best interest to be returned to Ghana, both because it would place him directly in danger and because he would lack care by a guardian.

{¶ 27} Accordingly, we sustain I.D.'s sole assignment of error, conclude that the trial court plainly erred by departing from established procedures in determining this case, and reverse the judgment of the court. This case is remanded to the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch with instructions to issue an order finding P.A. abandoned, to grant custody of P.A. to I.D., and to issue findings in accordance with 8 U.S.C. § 1101(a)(27)(J) based on the evidence present in the record.

*Judgment reversed; cause*
*remanded with instructions.*

BOGGS, P.J., concurs.
and DORRIAN, J., dissents.

DORRIAN, J., dissenting.

{¶ 28} I respectfully dissent because I conclude the trial court's jurisdiction over the complaint in this case terminated upon the occurrence of P.A.'s 18th birthday and, therefore, I would affirm the judgment dismissing the complaint as moot. However, I share the majority's concern over the trial court's handling of this case. Particularly troubling is the fact that, although the trial judge appeared to have a copy of the magistrate's proposed decision, the decision was not filed and made a part of the trial court record or served on the parties, thereby depriving I.D. the opportunity to file objections, if any, and depriving

this court the opportunity to review any findings upon appeal. Also troubling is the fact that the trial court later suggested that additional information was necessary but then failed to even schedule a second hearing until after P.A.'s 18th birthday notwithstanding the complaint having been filed more than 8 months before P.A.'s birthday, the uncontested nature of the proceeding, the potential significance of the outcome to P.A., and trial counsel's diligent efforts to inquire regarding the status. Nevertheless, because the trial court's jurisdiction expired, I would affirm the trial court's judgment dismissing the complaint as moot for lack of jurisdiction.

—————————————